```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
JASON NICKERSON,                    )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   C.A. No. 19-030 WES
                                    )
PROVIDENCE PLANTATION, et al.,      )
                                    )
        Defendants.                 )
_____)
```

**MEMORANDUM AND ORDER**

Before the Court are three Motions to Dismiss, ECF Nos. 62, 63, and 66, as well as Plaintiff's Answer to Defendants' Motions to Dismiss, ECF No. 98, which the Court construes as a Motion for Leave to File a Second Amended Complaint. For the reasons that follow, the Motions to Dismiss are GRANTED, the Motion for Leave to File a Second Amended Complaint is DENIED, and the First Amended Complaint, ECF No. 22, is DISMISSED.

I.  Background

Plaintiff is an inmate in Rhode Island state prison. R. & R. 1, ECF No. 7.  On January 25, 2019, Plaintiff filed his pro se Complaint, alleging "racial discrimination, retaliation, unsanitary food service and living conditions, inadequate medical care, anti-trust violations, cruel and unusual punishments and deprivation of due process." R. & R. 1. Magistrate Judge Lincoln D. Almond granted Plaintiff's Application to Proceed in forma

pauperis, ECF No. 2, pursuant to 28 U.S.C. § 1915. R. & R. 2. Judge Almond further concluded that the Complaint, consisting of 529 paragraphs and naming over 80 Defendants, was not a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" see R. & R. 3-4 (quoting Fed. R. Civ. P. 8(a)), sued individuals with no direct involvement in the factual allegations, see R. & R. 6, improperly sought money damages under 42 U.S.C. § 1983 against the State of Rhode Island, see R. & R. 5, improperly sought to represent a class of plaintiffs as a pro se litigant, see R. & R. 6-7, impermissibly asserted the theory of supervisory liability for claims brought pursuant to § 1983, see R. & R. 7-8, and contained claims that were untimely, see R. & R. 8-9. Judge Almond thus recommended that the Court dismiss the Complaint with leave for Plaintiff to file an amended complaint rectifying the deficiencies within thirty days. See R. & R. 9. The Court adopted the Report and Recommendation in full, over Plaintiff's objection. See November 19, 2019 Text Order.

Plaintiff subsequently filed his First Amended Complaint, ECF No. 22, which was referred to Judge Almond for initial screening. Judge Almond observed that "Plaintiff has substantially reduced the number of named Defendants in the Amended Complaint and appears to have endeavored in good faith to try to remedy many of the pleading deficiencies previously identified in my prior report and recommendation (ECF No. 7)." March 3, 2020 Text Order. "Thus,

2

out of deference to Plaintiff's pro se status," Judge Almond ruled that the Amended Complaint was "permitted to pass the initial screening phase for service on Defendants." Id. He noted, however, that "this preliminary screening determination should not be construed as a final determination that any of Plaintiff's numerous legal claims meet the Rule 12(b)(6) pleading threshold or are otherwise legally viable . . . ." Id.

A few months later, three Motions to Dismiss were filed, one by Dr. Jennifer Clarke, ECF No. 62, another by Dr. Christopher Salas, ECF No. 63, and a third by the State Defendants ("State's Mot. to Dismiss"), ECF No. 66. After several extensions of time, Plaintiff responded to the Motions to Dismiss with his Motion for Leave to File a Second Amended Complaint, ECF No. 98, accompanied by a Proposed Second Amended Complaint, ECF No. 98-1. The State Defendants filed an Objection to Plaintiff's Motion to Amend the Complaint ("State's Obj."), ECF No. 99, arguing that the requested amendment should be denied as futile.

II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint which "pleads facts that are merely

3

consistent with a defendant's liability" is insufficient.  Id. at 678 (citation and quotations omitted).

Leave to file amended pleadings shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  However, where the amended complaint would nonetheless fall prey to a motion to dismiss, a motion to amend should be denied as futile.  See D'Agostino v. ev3, Inc., 845 F.3d 1, 6 & n.3 (1st Cir. 2016) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).  The Court holds the allegations of a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers . . . ."  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

III. Discussion

    1.   Rule 8(a)

The State Defendants argue that Plaintiff has not offered a short and plain statement of the asserted bases for relief, as required by Rule 8(a).  See State's Mot. to Dismiss; State's Obj. 3-4.  Indeed, Plaintiff's First Amended Complaint is 95 pages, 743 paragraphs, and difficult to comprehend.  It covers a plethora of topics, implicating actors at all levels of Rhode Island government as well as private companies.  See First Am. Compl. ¶¶ 5-32.  The legal claims and factual allegations cover a wide variety of seemingly unrelated events spanning several years of Plaintiff's incarceration.

However, the Proposed Second Amended Complaint fixes those issues in large part. The Proposed Second Amended Complaint, coming in at 45 pages and 219 paragraphs, is not a model of brevity. Many of the factual allegations are extraneous, and many of the legal claims lack a basis in law. However, the proposed pleading clearly states eight counts, some of which exhibit sturdy links to Plaintiff's factual allegations. Importantly, Plaintiff's factual allegations are, for the most part, attributed to specific individuals such that Defendants are on notice as to the specific actions for which Plaintiff seeks to hold them liable. Thus, the Court will not dismiss the case under Rule 8(a), and will instead analyze the legal sufficiency of the allegations in the Proposed Second Amended Complaint.

2.   Rule 12(b)(6)

The State Defendants next argue that Plaintiff has failed to state a claim for relief under Rule 12(b)(6). See State's Mot. to Dismiss 10-15; State's Obj. 3-4. They do not analyze any of the eight specific counts in the Proposed Second Amended Complaint, instead painting with a broad brush: "Plaintiff's Proposed Second Amended Complaint serves no legitimate purpose[,]" State's Obj. 3; "None of the shortcomings of Plaintiffs First Amended Complaint have been remedied by his Proposed Second Amended Complaint[,]" id. at 4; "Plaintiff repeatedly fails to state any cognizable claim with a solid factual basis for which relief may be granted[,]" id.

5

The Court disagrees. The proposed pleading lays out eight counts that can be analyzed for legal sufficiency, and the Court will do so.

      a.   Mice

Counts I and II, brought pursuant to 42 U.S.C. § 1983, allege that a mice infestation in the prison has created conditions of confinement that violate the Eighth Amendment. See Proposed Second Am. Compl. ¶¶ 138-161, ECF No. 98-1. Count I alleges that the mice infestation has unconstitutionally diminished the safety and sanitariness of the food served to Plaintiff, while Count II focuses on general living conditions outside of food service.

The Eighth Amendment prohibits cruel and unusual punishments. U.S. Const. amend. VIII. Conditions of confinement meet this level of disrepute where they fail to meet "basic human needs" or where they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (citations omitted). To this end, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a claim that conditions of confinement violate the Eighth Amendment, a plaintiff must plead both that the conditions within the prison walls objectively fall short of these requirements and

that the prison officials have the subjective state of mind of "'deliberate indifference' to inmate health or safety . . . ." Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 302 (1991)).

As this Court has held, the mere presence of mice in a prison does not on its own rise to the level of an Eighth Amendment violation. See Robinson v. Wall, CA 09-277-S, 2015 WL 728508, at *5 (D.R.I. Feb. 19, 2015) ("[Plaintiff] does not articulate the specific conditions of his cell that led him to determine it was 'filthy,' except for the presence of vermin, which alone is insufficient to establish a constitutional violation."); Briggs v. Wall, C.A. 09-456 S, 2009 WL 4884529, at *3 (D.R.I. Dec. 16, 2009) ("[P]laintiff does not provide any details . . . describing the severity, duration or frequency of the alleged mice problem.  Nor does he indicate any adverse health effects or suggest that the conditions were so unsanitary as to create current or future health concerns.").

However, the Eighth Amendment is violated where (1) an infestation is prolonged and extensive, (2) the vermin have sickened or injured prisoners (or are highly likely to do so in the future), (3) the infestation is known to prison staff, and (4) the prison does not take reasonable steps to address the infestation.  See Thomas v. Illinois, 697 F.3d 612, 614-15 (7th Cir. 2012) (noting that relevant factors include "how extensive the infestation of a prisoner's cell is, what the infesting pests

7

are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have . . . and how long the infestation continues"); Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008) ("[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." (citation omitted)); Foulds v. Corley, 833 F.2d 52, 54 (5th Cir. 1987) ("[Plaintiff] alleges that his solitary confinement cell was extremely cold and that he was forced to sleep on the floor where rats crawled over him.  If proven, such conditions of confinement would contravene the eighth amendment."); Masonoff v. DuBois, 899 F. Supp. 782, 801-02 (D. Mass. 1995) (holding that plaintiffs stated an Eighth Amendment claim by averring that "mice and rats . . . roam freely in the halls and cells[,]" there was a "cockroach infestation[,]" and one inmate "was bitten by a rat"); id. ("Active infestation of vermin such as rats, mice, birds, and cockroaches is inconsistent with the adequate sanitation required by the Eighth Amendment." (quoting Toussaint v. McCarthy, 597 F. Supp. 1388, 1411 (N.D. Cal. 1984)); Walton v. Fairman, 836 F. Supp. 511, 513-15 (N.D. Ill. 1993) (holding that Plaintiffs stated a claim for relief based on allegations that rats made nests in their unit, multiple inmates had been bitten by rats or mice, and defendants did not make any attempts to exterminate the vermin:  "imprisoning plaintiffs in

8

dungeon-like conditions in which rodents crawl all over and attack them is barbarous to the standards of our contemporary society" (citing Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992)); Laaman v. Helgemoe, 437 F. Supp. 269, 323 (D.N.H. 1977) (noting that Eighth Amendment requires that prisons "be minimally safe: dangers are presented . . . by the presence of rats, insects and other vermin").

Here, Plaintiff alleges that a mouse bit him in 2016, a mouse carcass was found in another inmate's food in 2017, and Plaintiff has "on numerous occasions found mice urine, feces and their bite marks in food served to him in the dining hall, and his store orders and his legal work/documents." Proposed Second Am. Compl. ¶¶ 35-37. Despite dozens of paragraphs regarding these concerns, see id. ¶¶ 35-67, Plaintiff only identifies a single time when he has seen or come into direct contact with a mouse: "Plaintiff while housed in Maximum Security in the Fall of 2016 was bitten on the back by a mouse while sleeping when he rolled over on it[,]" id. ¶ 35. This assertion, though highly concerning, was a single event that occurred over four years ago. Moreover, Plaintiff does not note any other details of this encounter or any continuing harms from it. Id. This single bite cannot establish an Eighth Amendment claim.

Much of Plaintiff's Complaint focuses on the allegation that another inmate found a mouse carcass in his food in 2017,

9

Plaintiff's subsequent efforts to obtain kosher meals,[1] and his hunger strike. See Proposed Second Am. Compl. ¶¶ 35-67; see also id. ¶ 47 ("Plaintiff and approximately fifty-one other inmates in Maximum stopped eating the building's food service, in late December 2017 – early January 2018, due to the known and obvious mice infestation's severity contaminating the food supply and kitchen, . . . which made these inmates sick/ill that evening."). However, both the First Amended Complaint and the Proposed Second Amended Complaint contain statements calling into question whether the object seen in the food was in fact a mouse. See First Am. Compl. ¶ 55, ECF No. 22 ("Amaral said . . . 'it looked more like a green pepper' . . . ."); Proposed Second Am. Compl. ¶ 43 ("Bastin told Plaintiff . . . 'It looked more like a finger.'"). Moreover, this was a one-time, one-mouse problem. Plaintiff makes no assertion that any other mouse carcasses have been found in food or anywhere else in the prison.

Additionally, Plaintiff alleges that he has found mouse urine, feces, and bite marks. See Proposed Second Am. Compl. ¶ 36. This claim is concerning. However, his allegations lack the details needed to determine the severity of the problem; no specific dates, locations, or frequencies are given. Id. Furthermore, he does not identify any specific health problems

---

[1] He does not allege that he has been denied kosher meals.

that he has suffered or is likely to suffer based on these alleged conditions. Id. While troubling, this allegation still falls short of stating a constitutional violation.

Most disturbingly, Plaintiff alleges that correctional officers have mocked his concerns regarding the mice infestation and have refused to take steps to address it. See id. ¶ 38 ("C.O. Lieutenant Amaral and other union members . . . visually observed the obvious mouse carcass from the meal service and . . . began to laugh, and continued serving that contaminated meal . . . ."); id. ¶ 42 ("C.O. Captain Duffy . . . told the Plaintiff concerning the . . . mice infestations 'those are our pets and any further discussion of this is to incite the building, you get me' . . . ."); id. ¶ 44 ("C.O. Bastin [said] 'that was not food. It was a mouse.'" "'That's why everyone laughed.'"); id. ¶ 46 ("Acting Warden Jeffrey Aceto reiterated that the mice of the infestation . . . were the building's 'pets,' . . . that no food alternatives would be offered and that he did not care about Plaintiff's suffering . . . ."); id. ¶ 48 ("Aceto [and] Duffy . . . threatened Plaintiff and the other fifty-one inmates with segregation and disciplinary infractions if their not eating the contaminated food service-stance did not cease . . . .").

The Court does not take such charges lightly. If true, this behavior would contravene the duty of prison officials to treat those behind bars with basic human dignity. And were Plaintiff to

11

meet the objective prong of the Eight Amendment inquiry, such allegations would satisfy the secondary requirement of deliberate indifference. However, crass comments made by correctional officers cannot on their own establish an Eighth Amendment claim.

In sum, Plaintiff has raised deeply concerning allegations. However, his pleadings do not contain specific allegations regarding the pervasiveness of the infestation or the ongoing health effects of the infestation. Moreover, he does not claim to have directly observed a mouse since 2016. Thus, although in some respects a close call, the Court concludes that Plaintiff's Eighth Amendment claims fail to cross "the line from conceivable to plausible . . . ." Twombly, 550 U.S. at 570. These claims therefore cannot survive Defendants' Motions to Dismiss.

    b.    Other Claims

The other counts of the Proposed Second Amended Complaint can be dealt with expeditiously, as none comes close to stating a basis for relief.

Count III alleges that Defendants have burdened his exercise of religion. See Proposed Second Am. Compl. 28. However, the Court can find only a single encumbrance described in the proposed pleading: that prison officials either lost or destroyed a book about Judaism that belonged to Plaintiff. id. ¶ 169. Without more, this allegation falls wells short of unconstitutionality.

Count IV alleges a violation of the Eighth Amendment through the denial of medical care. However, this count simply realleges Plaintiff's claims that mice have contaminated the food served at the prison. See id. ¶ 178. Thus, Count IV fails for the reasons stated above.

Count V alleges that the inclusion of certain soy products in the food served to Plaintiff and available for purchase in the prison commissary violates the Eighth Amendment. Relatedly, Count VII claims product liability based on harm allegedly caused by those soy products. However, Plaintiff's conjectural and conclusory statements regarding the toxicity of the soy products and the ways they have harmed him do not "raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citation omitted); see also Proposed Second Am. Compl. ¶ 185(a) (referencing "research [Plaintiff has] done [showing that] the Universal Protein soy substance was toxic/poisonous due to extremely high lead in the farm(s) soil"); Proposed Second Am. Compl. ¶ 185(e) ("Plaintiff checked his Universal Protein bags . . . from 2013 until 2018 after each purchase and noticed his purchases now had no labels/warning but other inmates' purchases had different labels 'PHENYLKETONURICS: CONTAINS PHENYLALANINE.'" "Plaintiff was misled into believing this product to be free of impurities deceiving Plaintiff."); id. ¶ 185(k) ("As a result of this deliberately and deceptively

13

altered/misrepresented label Plaintiff suffered . . . physical injury . . . ."). Thus, Counts V and VII fail to state claims for relief.

Count VI asserts that several Defendants, including non-medical personnel, committed medical malpractice. Id. ¶¶ 201-05. While the Complaint mentions food contamination, a prescribed medical diet, and a "foot doctor's prescription[,]" the basis of the allegation is a mystery. Id. ¶ 204. There is no mention of any particular action that the medical personnel should have taken or how that led to his alleged injuries. Id. ¶¶ 198-206. Other parts of the Proposed Second Amended Complaint provide conclusory criticisms of actions taken by medical personnel, but do not identify how those actions were misguided, the basis for Plaintiff's criticisms, what should have been done instead, or how the shortcomings harmed Plaintiff. See, e.g., id. ¶ 82 ("Dave Piccirillo, R.I.D.O.C. Nurse, deliberately deleted one blood test despite the Doctor[']s order and delayed Plaintiff's other blood tests from January - April 2018 during the period most revealing in his blood-work to deliberately exacerbate Plaintiff's obvious suffering and injuries telling Plaintiff falsely that he had 'to fast' before each test the night before and rescheduling . . . ."); Id. ¶¶ 119-20 ("Piccirillo . . . deliberately misdiagnosed Plaintiff's blood pressure saying it was 'good.' Plaintiff then complained to . . . Salas who intervened

14

and re-administered the blood pressure [test.]")); Id. ¶ 129 ("Plaintiff's medically prescribed Ensures (8 daily) were dropped to six Ensures . . . ."). This count therefore does not articulate an entitlement to relief.

Count VIII asserts that various Defendants have supervisory liability under § 1983. Id. ¶¶ 215-19. A supervisor may be liable for the constitutional violations caused by a subordinate only where "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)). Plaintiff makes no such allegations. See Proposed Second Am. Compl. ¶¶ 215-19. The sole supervisory allegation is that "[t]he failure of the supervisory defendants to provide adequate training, education and discipline of the subordinate defendants has resulted in the denial of Plaintiff's rights . . . ." Id. ¶ 218. A mere failure to train is not an affirmative link. Count VIII therefore fails to state a claim for relief.

IV. Conclusion

For the foregoing reasons, the Motions to Dismiss, ECF Nos. 62, 63, and 66, are GRANTED, the Motion for Leave to File a Second

15

Amended Complaint, ECF No. 98, is DENIED, and the case is DISMISSED.[2]

IT IS SO ORDERED.

/s/ *William E. Smith*

William E. Smith
District Judge
Date:  March 16, 2021

---

[2] Plaintiff's Motion for an Extension of Time to serve Defendants, ECF No. 89, and Plaintiff's Motion for an Extension of Time to File an Opposition to Defendants' Objection to Plaintiff's Motion to Amend the Complaint, ECF No. 101, are therefore denied as moot.

16